IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GO GREEN BOTANICALS, INC., | § § § | |
| *Plaintiff,* | § § § | SA-22-CV-00373-ESC |
| vs. | § § § | |
| TRI-STATE INSURANCE COMPANY OF MINNESOTA, | § § § § | |
| *Defendant.* | § | |

### ORDER

Before the Court in the above-styled cause of action is Defendant Tri-State Insurance Company of Minnesota's Motion to Dismiss [#8]. By its motion, Defendant asks the Court to dismiss all of the claims asserted by Plaintiff in this case. The undersigned has authority to enter an order on this dispositive motion pursuant to 28 U.S.C. § 636(c), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#27]. In evaluating the merits of Defendant's motion, the Court has also considered Plaintiff's response [#16] and Defendant's reply [#17]. For the reasons set forth below, the Court will **grant** the motion. Although district courts usually provide a plaintiff with one opportunity to amend a pleading before ordering dismissal, the Court finds further amendment in this case would be futile in light of governing Fifth Circuit precedent foreclosing Plaintiff's claims.

### I. Background

Plaintiff Go Green Botanicals, Inc. ("Go Green"), an operator of stores specializing in sales of cannabidiol (CBD) and THC products, filed this action in the 285th District Court of Bexar County, Texas, against Drexler Insurance Services, LLC ("Drexler"), and Tri-State

1

Insurance Company of Minnesota ("Tri-State") regarding a commercial property insurance policy underwritten by Defendants ("the Policy"). (Orig. Pet. [#1-3] at ¶ 8.) This dispute concerns two locations of Go Green's business in San Antonio, Texas, covered by the Policy. (*Id.*)

Go Green alleges that the Policy contains provisions insuring Go Green from losses caused by the suspension of business operations due to the COVID-19 pandemic and various government orders issued by the State of Texas, Bexar County, and the City of San Antonio. (*Id.* at ¶¶ 8, 14.) Go Green claims that it reported its business losses to Drexler, its insurance agent, and Drexler informed Go Green that its losses were not covered under the policy and Go Green need not bother with filing a claim. (*Id.* at ¶ 18.) Go Green asserts causes of action for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and civil conspiracy.

Tri-State removed Go Green's Petition to this Court on April 18, 2022, on the basis of diversity jurisdiction, alleging improper joinder of Drexler, an in-state Defendant. (Notice of Removal [#1].) Go Green filed a motion to remand for lack of diversity jurisdiction, but the District Court denied the motion on the basis that Drexler was indeed improperly joined. (Order [#18].) Tri-State has moved to dismiss all of Go Green's claims pursuant to Rule 12(b)(6), and the motion is ripe for the Court's review.

## II.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the Go Green pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the Go Green." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the Go Green cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). A court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Because the Policy is central to the claims at issue, the Court finds that it has been incorporated into the complaint by reference, and the Court may consider this contract without converting Tri-State's motion into a motion for summary judgment. (Policy [#8-1].)

### III.  Analysis

Tri-State argues it is entitled to dismissal of Plaintiff's claims based on the construction of the Policy as a matter of law.  Because contract construction is generally decided as a matter of law, interpretation of a contract is generally suitable for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted.  *Cruz v. CitiMortgage, Inc.*, No. 3:11-cv-2871-L, 2012 WL 1836095, at *2 (N.D. Tex. May 21, 2012) (citations omitted).  The parties agree that, because this case arises under the Court's diversity jurisdiction, Texas law governs this action and the construction of the Policy.  *See Hermann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

Texas law requires proof of the following elements for a breach of contract claim: (1) existence of a valid contract between the parties; (2) performance by the plaintiff as required by the contract; (3) defendant's breach of the contract; and (4) damages suffered by the plaintiff as a result of defendant's breach.  *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).  Tri-State's motion to dismiss primarily focuses on the third element, arguing that the terms of the Policy foreclose Go Green's theory of breach.

This Court's task in construing any contract is "to ascertain the true intentions of the parties as expressed in the instrument."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citation omitted).  To do so, the Court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."  *Id.* (citation omitted).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Id.* (citation omitted).

"If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *Id.* (citation omitted).  "A contract is unambiguous if it can be given a definite or certain legal meaning." *Id.* (citation omitted).  "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *REO Indus., Inc. v. Nat'l Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991) (applying Texas law).

The primary two Policy provisions requiring the Court's construction are the "Business Income" provision and the "Civil Authority" provision.  The "Business Income" provision, which is entitled "Business Income (and Extra Expense) Coverage Form," provides in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage* to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy [#8-1], at 107 (emphasis added).)  The Policy defines a "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." (*Id.* at 122.)  The "period of restoration" means the period of time that begins "immediately after the time of direct physical loss or damage" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced," "when business is resumed at a new permanent location," or "12 consecutive months after the date of direct physical loss or damage." (*Id.* at 50–51.)

Go Green alleges that this provision covers the loss of business income during the period of government shutdown due to federal and local stay-at-home orders.  (Orig. Pet. [#1-3], at ¶

5

16.)  Tri-State argues that this provision applies only to a suspension of business operations (and corresponding losses of income) caused by a "direct physical loss of or damage" to the insured property, not the pure economic losses alleged here.

> The Policy's "Civil Authority" coverage provisions provide in relevant part:
>
>> When a Covered Cause of Loss causes *damage to property* other than property at the described premises,[1] we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>>
>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority *as a result of the damage*, and the described premises are within that area but are not more than one mile from the damaged property; and
>>
>> (2) The action of civil authority is taken in response to *dangerous physical conditions resulting from the damage* or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 108 (emphasis added).)  Go Green alleges that the federal and local stay-at-home orders are acts of "Civil Authority," which have caused loss of income and qualify as a covered loss under the Policy.  (Orig. Pet. [#1-3], at ¶ 17.)  Tri-State contends that Go Green cannot establish the elements for Civil Authority coverage because it does not allege any physical loss to a nearby property, the prohibition of access to an insured property as a result of damage to a nearby property, or that the government orders were issued "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage" to nearby property.

The Fifth Circuit, applying Texas law, has already repeatedly rejected Go Green's interpretation of the contract language in denying claims for coverage of COVID-19-related

---

[1] The "described premises" are the buildings listed in the Policy's declarations. (*Id.*)

6

business losses under policies either identical or similar to the Policy at issue here.  *See Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656 (5th Cir. 2022) (per curiam); *Aggie Invs., LLC v. Cont'l Cas. Co.*, No. 21-40382, 2022 WL 257439 (5th Cir. Jan. 26, 2022); *Terry Black's Barbecue, LLC v. State Auto Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022).  These precedents foreclose Go Green's breach of contract claims.

In *Terry Black's Barbeque*, the Fifth Circuit, applying policy language identical to the language at issue here, held that economic losses stemming from compliance with COVID-19-related government orders did not constitute a "direct physical loss of or damage to property" for purposes of "business income" coverage under a commercial property policy insuring a barbeque restaurant.  22 F.4th at 455–56.  Although the Texas Supreme Court has not yet interpreted the policy language at issue, the Fifth Circuit made an *Erie* guess as to how the Supreme Court would decide the issue.  *Id.* at 454 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  In doing so, the Fifth Circuit relied on previous rulings by the Texas Supreme Court and Texas courts of appeals interpreting "physical" to mean "tangible."  *Id.* at 455–56 (quoting *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 24 (Tex. 2015); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 833–34 (Tex. App.—Houston [1st Dist.] 1996, no pet.)).  The Fifth Circuit also looked to Texas appellate court decisions in defining the term "loss" to mean "a state of fact of being lost or destroyed, ruin or destruction."  *Id.* at 456 (quoting *deLaurentis v. U.S. Servs. Auto Ass'n*, 162 S.W.3d 714, 723 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  The Fifth Circuit thus concluded that the "Texas Supreme Court would interpret a direct physical loss of property to require a tangible alteration or deprivation of property."  *Id.* at 458.

The Fifth Circuit in *Terry Black's* reasoned that this interpretation was consistent with the overall context of the policy at issue, which insured a commercial property, as here, and covers business interruption caused by loss or commercial damage *to the* commercial property, not just loss of use of the property. *Id.* at 456–58; *see also Aggie Invs.*, 2022 WL 257439, at *2 (noting that the "loss of use" exclusion in a similar policy "shows the policy contemplates a distinction between 'loss of property' and 'loss of use'").[2] Additionally, the panel found significant that the "period of restoration" provision of the Policy, which is also contained in the Policy here, provides coverage only for the "time needed to repair, rebuild or replace the lost or damaged property or the period necessary to resume operations at a different location." *Id.* This provision "necessarily contemplates a tangible alteration to property that requires repair, rebuilding or replacement." *Id.* No such need for repairs or replacement or any physical damage is alleged here.

In *Aggie Investments*, the policyholder (a tea and spice gift shop) sought to distinguish its COVID-19 business losses from the claim rejected in *Terry Black's* by contending that it was required to close down entirely, while the restaurant in *Terry Black's* could remain open for delivery and takeout service. 2022 WL 257439, at *2. The Fifth Circuit flatly rejected this argument, holding that the distinction "makes no difference," where there is "not a tangible alteration or deprivation of *property*" for purposes of "business income" coverage. *Id.* (emphasis in original). Finally, in *Ferrer & Poirot*, the Fifth Circuit reaffirmed its interpretation of "business income" coverage provisions similar to the one at issue here in again holding that

---

[2] The Court discusses this exclusion *infra* at p. 11.

where an insured is not deprived of its property due to some physical loss or damage, there is no coverage.[3]  36 F.4th at 658.

Although *Terry Black's* and *Aggie Investments* did not address a "civil authority" provision of the type at issue here, *Ferrer & Poirot* did so.  In *Ferrer & Poirot*, the Fifth Circuit applied the definition of "covered cause of loss" as requiring physical loss or damage to the insured's property to "civil authority" coverage.  36 F.4th at 658 (construing identical language for coverage "[w]hen a Covered Cause of Loss causes *damage to property*") (emphasis added).

Under governing Fifth Circuit precedent, Go Green's breach of contract claims fail as a matter of law.  Go Green has not alleged any facts indicating any "direct physical loss of or damage to" property, as required for "Business Income" coverage, only temporary restrictions on the use of its property.  Nor has Go Green alleged damage to property within one mile of the insured premises caused by a Covered Cause of Loss to trigger the "Civil Authority" provision. *See ILIOS Prod. Design*, 2021 WL 1381148, at *8 ("Just as the COVID-19 pandemic did not cause direct physical loss to Plaintiff's property, Plaintiff fails to show that there was direct physical loss to other property.") (applying Texas law).  Nor are there any allegations that the governmental orders were issued in response to dangerous physical conditions resulting from the

---

[3] In reaching these holdings, the Fifth Circuit joined numerous other federal circuits, state appellate courts, and federal district courts who have rejected similar claims for COVD-19-related business losses under commercial insurance policies, applying Texas and other state laws. *See, e.g.*, *Rialto Pockets, Inc. v. Beazley Underwriting Ltd.*, No. 21-55196, 2022 WL 1172134 (9th Cir. Apr. 20, 2022); *Uncork and Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926 (4th Cir. 2022); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704 (10th Cir. 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216 (2d Cir. 2021); *Sandy Point Dental v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).  *See also, e.g.*, *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029 (W.D. Tex. 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353 (W.D. Tex. 2020); *LDWB #2 LLC v. FCCI Ins. Co.*, No. 1:20-cv-425-LY, 2021 WL 2744568 (W.D. Tex. July 1, 2021); *Uncle Nicky's LLC v. Blackboard Ins. Co.*, No. 1:21-cv-30-RP, 2021 WL 2980587 (W.D. Tex. June 30, 2021).

damage or continuation of the Covered Cause of Loss or that the orders prohibited access to the insured premises. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011) ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." (internal quotation and citation omitted)). Because the governmental orders identified in Go Green's pleading were issued to mitigate potential harm from the COVID-19 pandemic, not prior damage to property, there is no coverage for business losses resulting from temporary closures based on these orders.

Go Green's response to Tri-State's motion to dismiss acknowledges Fifth Circuit precedent on the coverage issues before the Court but nonetheless argues that this Court should disregard the Fifth Circuit's decisions because *Terry Black's* and its progeny were based merely on an *Erie* guess, not a binding decision by the Texas Supreme Court. This argument misses the mark. District courts within the Fifth Circuit and subsequent panels of the Fifth Circuit Court are bound by the Fifth Circuit's *Erie* predictions of state law absent any subsequent state-court decisions establishing that the Fifth Circuit's prediction of state law is incorrect. *See Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates*, Series 2007-FM2, 731 Fed. App'x 302, 309 (5th Cir. 2018). Go Green has not directed this Court to any intervening state-court decisions that call into question the Fifth Circuit's *Erie* guess.

Alternatively, Go Green argues that the facts surrounding its denial of coverage are distinguishable from *Terry Black's* and *Aggie Investments* because Go Green seeks coverage under the "Civil Authority" provision not just the "Business Income" provision. Yet, the Fifth

Circuit addressed an identical "Civil Authority" provision in *Ferrer & Poirot*, applying the physical loss requirement to the Covered Cause of Loss in that provision. 2022 WL 2070875, at *2. Go Green's breach of contract claims under either provision of the Policy fail as a matter of contract construction.

Moreover, even if coverage were available, Tri-State has identified multiple policy exclusions that apply to the contract, which Go Green does not address in its response to the motion to dismiss. All relevant coverage grants are subject to the Policy's "Exclusion of Loss Due to Virus or Bacteria" ("Virus Exclusion"), which provides in pertinent part as follows:

> A. This exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property *and forms or endorsements that cover business income, extra expense or action of civil authority*.
>
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces *or is capable of inducing physical distress, illness or disease* . . . .

(Policy [#8-1], at 118 (emphasis added).) Go Green's claims fall within this exclusion. As argued by Tri-State, if the Virus Exclusion had no application whenever a virus leads to issuance of a government order, the Virus Exclusion would never apply to Civil Authority coverage, nullifying that part of the exclusion.

Additionally, two other exclusions in the Policy—the "Loss of Use Exclusion, Ordinance Or Law Exclusion" and the "Acts Or Decisions" Exclusion—bar coverage for any economic losses, like those asserted here, based upon mere loss of use of property associated with governmental acts, decisions or laws. The "Loss of Use" Exclusion provides that Tri-State "will not pay for loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market." (*Id.* at 124 (emphasis added).) The "Ordinance Or Law" Exclusion provides in pertinent part:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> a. Ordinance Or Law
>
> The enforcement of or compliance with any ordinance or law: (1) Regulating the construction, use or repair of any property; or (2) Requiring the tearing down of any property, including the cost of removing its debris.

(*Id.* at 122.) Finally, the "Acts or Decisions" Exclusion provides that Tri-State "will not pay for loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization or government body." (*Id.* at 125.) This exclusion likewise has been held to preclude COVID-19 business income claims based upon similar Governmental Orders. *See FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, 524 F. Supp. 3d 1051, 1061 (S.D. Cal. 2021) (plain language of identical Acts or Decisions Exclusion precluded coverage where alleged losses stemmed from governmental closure orders).

Finally, because there is no coverage under the Policy for Go Green's business income losses, its extracontractual claims based on these losses cannot survive either. In addition to its breach of contract claim, Go Green has asserted extracontractual claims against Tri-State for bad faith, violation of Texas Insurance Code Chapter 541, violation of Texas Insurance Code Chapter 542, violation of the Texas Deceptive Trade Practices Consumer Protection Act, and civil conspiracy. The gravamen of each of these claims is that Tri-State acted inappropriately by refusing to pay Go Green's claim. Tri-State's entitlement to dismissal with respect to Go Green's coverage claim requires entry of judgment on Go Green's extracontractual claims as well. As a general rule "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) (internal citation omitted). Moreover, "[a]n insured cannot recover *any*

damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018).

**IT IS THEREFORE ORDERED** that Defendant Tri-State Insurance Company of Minnesota's Motion to Dismiss [#8] is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims asserted by Plaintiff Go Green Botanicals, Inc. are hereby **DISMISSED**.

SIGNED this 9th day of August, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE